**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| In Re: JP Morgan Chase Bank Home Equity Line of Credit Litigation | ) ) ) ) ) ) ) ) ) |

Master Docket Case No. 10 C 3647

ALL CASES

Hon. Judge Rebecca R. Pallmeyer

**JPMORGAN CHASE BANK N.A.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS THE
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Date:   October 19, 2010

LeAnn Pedersen Pope (6186058)
Victoria R. Collado (6204015)
Michael G. Salemi (6279741)
Tiffany L. Sorge Smith (6293842)
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, 22nd Floor
Chicago, Illinois 60611-3607
Telephone:    (312) 840-7000
Facsimile:    (312) 840-7900

## TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ...........................................................................................iv

ALLEGATIONS IN COMPLAINT .................................................................................1

LEGAL AND REGULATORY BACKGROUND .........................................................3

MOTION TO DISMISS STANDARD .............................................................................5

ARGUMENT .....................................................................................................................6

    I.      PLAINTIFFS' TILA CLAIMS FAIL (COUNTS I-II)............................................6

           A.      TILA Does Not Require Chase To Consider The Level Of Available Equity In Plaintiffs' Properties. ....................................................7

           B.      TILA Does Not Prohibit The Use Of AVMs Or Make Actionable The Use Of "Unreasonable" AVMs, And Plaintiffs Fail To Allege How The AVMs Were Flawed. ..............................................................9

           C.      Plaintiffs' TILA Claims Alleging Chase Relied On Unlawful "Triggering Events" Fail. .............................................................11

           D.      Plaintiffs' TILA Claims Alleging Chase Lacked A "Sound Factual Basis" To Suspend Or Reduce Their HELOCs Fail.................................14

           E.      Plaintiffs Fail to Adequately Allege That Their Property Values Did Not Significantly Decline Or That Chase Improperly Refused To Reinstate Their HELOCs. ....................................................14

           F.      Plaintiffs Fail To Adequately Allege Their HELOCs Were Used For Primarily Personal, Family, Or Household Purposes..........................16

    II.     PLAINTIFFS FAIL TO STATE A CLAIM FOR DECLARATORY RELIEF UNDER TILA (COUNT II). ....................................................18

    III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT BECAUSE THEY ALLEGE NO FACTS SHOWING THAT CHASE BREACHED THE HELOC AGREEMENTS (COUNT III). ......................................................................................................19

           A.      Plaintiffs Fail To State A Claim For Breach Of Contract Because They Do Not Allege Any Contractual Provision Chase Allegedly Breached. ....................................................19

           B.      Plaintiffs Fail To State A Claim For Breach Of Contract Based On Chase's Suspension And/Or Reduction Of Plaintiffs' HELOCs. ...............21

           C.      Plaintiffs Fail To State A Claim For Breach Of Contract Based On Chase Charging Plaintiffs An Annual Fee................................21

IV.     PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE
        IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
        BECAUSE THEY ALLEGE NO FACTS SHOWING THAT CHASE
        BREACHED THE HELOC AGREEMENTS........................................................22

        A.      Mayes' Implied Covenant Claim Fails Because Texas Law (Which
                Governs His HELOC Agreement) Does Not Recognize Such A
                Claim Under These Circumstances. ........................................................22

        B.      The Implied Covenant Claims of Cavanagh, the Franks, Malcolm,
                Walsh, And Hackett Fail Because Plaintiffs Do Not Identify Any
                Contract Provision On Which Their Claims Are Based............................23

        C.      Plaintiffs Fail To State An Implied Covenant Claim Based On
                Chase's Suspension And Reduction Of Their HELOCs. ...........................24

        D.      Plaintiffs Fail To State A Claim That Chase Violated The Implied
                Covenant By Failing To Provide Sufficient Notices Of Suspension
                Or Reduction To Borrowers.....................................................................24

        E.      Plaintiffs Fail To State A Claim That Chase Violated Any Implied
                Covenant By Shifting The Burden Of Reinstatement To Plaintiffs...........27

V.      PLAINTIFFS FAIL TO STATE A CLAIM FOR RESTITUTION AND
        UNJUST ENRICHMENT. ...................................................................................28

        A.      Plaintiffs Fail To State A Claim For Restitution And Unjust
                Enrichment Because Express Contracts Govern The Parties'
                Relationships. .......................................................................................28

        B.      Plaintiffs Fail To Allege Chase Wrongfully Retained Any Actual
                Benefit...................................................................................................30

VI.     PLAINTIFFS' STATUTORY CONSUMER FRAUD CLAIMS
        ALLEGING "FRAUDULENT" CONDUCT FAIL (COUNTS VI, VIII-
        X). ......................................................................................................................31

VII.    PLAINTIFFS' STATUTORY CONSUMER CLAIMS ALLEGING
        "UNFAIR" OR "UNLAWFUL" CONDUCT FAIL (COUNTS VI-VII). ..............33

VIII.   WILDER'S CLAIM UNDER CALIFORNIA'S UCL FAILS BECAUSE
        THE UCL DOES NOT APPLY TO ACTIONS OCCURRING OUTSIDE
        OF CALIFORNIA THAT ALLEGEDLY INJURE NON-CALIFORNIA
        RESIDENTS (COUNT VI). .................................................................................35

CONCLUSION....................................................................................................................36

# TABLE OF AUTHORITIES

**Page No.**

## Federal Cases

*Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572 (D. Del. 2007) *aff'd*,
Nos. 09-2275, 09-2336. 2010 WL 3528903 (3d Cir. Sept. 13, 2010).................................20

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).........................................................................passim

*B.L. Sailor v. Northern States Power Co.*, 4 F.3d 610 (8th Cir. 1993).........................................33

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663
(7th Cir. 1986)........................................................................................................19

*Behdjou v. U.S. Bancorp*, No. CV 09-2314 AHM (RCx), 2009 WL 2048124 (C.D.
Cal. July 13, 2009) ...................................................................................................35

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).............................................................5, 6, 15

*Blakeley v. Boltinghouse*, No. Civ.A. H-03-4901, 2005 WL 1185944 (S.D. Tex.
May 4, 2005).........................................................................................................20

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) ...........................................................................5

*Centers v. Centennial Mortg., Inc.*, 398 F.3d 930 (7th Cir. 2005) ..............................................6

*City of Highland Park v. Train*, 519 F.2d 681 (7th Cir. 1975)...................................................19

*Davis v. G.N. Mortg. Corp.*, 396 F.3d 869 (7th Cir. 2005)........................................................32

*Drobnak v. Anderson Corp.*, Civil No. 07-2249 (PAM/JSM), 2008 WL 80632 (D.
Minn. Jan. 8, 2008) ................................................................................................32

*Duffy v. Ticketreserve, Inc.*, No. 09 C 1746, 2010 WL 2681045 (N.D. Ill. July 6,
2010).....................................................................................................................6

*Falahati v. JPMorgan Chase Bank, N.A.*, No. CV 09-06012 RGK, slip op. (C.D.
Cal. Dec. 22, 2009) ...............................................................................................30

*Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555 (1980)...........................................................3

*Galindo v. Financo Fin., Inc.*, No. C 07-03991 WHA, 2008 WL 4452344 (N.D.
Cal. Oct. 3, 2008) ..................................................................................................17

*Gantchev v. Predicto Mobile, LLC*, No. 09 C 2312, 2009 WL 3055317 (N.D. Ill. Sept. 18, 2009) ................................................................................................32

*Hamilton v. Wells Fargo Bank, N.A.*, No. 09-04152 CW, 2010 WL 1460253 (N.D. Cal. Apr. 12, 2010) .........................................................................17, 18

*Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525, (7th Cir. 2007) ...............................11

*Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994) ........................................10

*Hickman v. Wells Fargo Bank N.A.*, 09 C 5090, slip op. (N.D. Ill. May 11, 2010) ("*Hickman II*") ......................................................................................passim

*Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779 (N.D. Ill. 2010) ("*Hickman I*") .........................................................................................passim

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .........................................32

*Laborers' Pension Fund v. Blackmore Sewer Constr.*, 298 F.3d 600 (7th Cir. 2002) ...................................................................................................10

*Levin v. Citibank*, N.A., No. C-09-0350-MMC, 2009 WL 3008378 (N.D. Cal. Sept. 17, 2009) ...............................................................................................32

*Levin v. Downey Sav. & Loan F.A.*, No. CV-09-1656-PHX-JAY, 2009 WL 4282471 (D. Ariz. Nov. 25, 2009) .........................................................20

*Love v. The Mail on Sunday*, No. CV057798ABCPJWX, 2006 WL 4046180 (C.D. Cal. Aug. 15, 2006) .....................................................................20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)..................................................13

*Malcolm v. JPMorgan Chase Bank, N.A.*, No. 09-4496-JF (PVT), 2010 WL 934252 (N.D. Cal. March 15, 2010) ...........................................4, 8, 27

*McCord v. Minnesota Mut. Life Ins. Co.*, 138 F. Supp. 2d 1180 (D. Minn. 2001) ....................20

*Oracle Corp. v. SAP AG*, No. C 07-1658 PJH, 2010 WL 3258603 (N.D. Cal. Aug. 17, 2010)......................................................................................31

*Plotkin v. Ryan*, 239 F.3d 882 (7th Cir. 2001)............................................................14

*Pollack v. U.S. Dept. of Justice*, 577 F.3d 736 7th Cir. 2009).....................................14

*Rendon v. Countrywide Home Loans, Inc.*, No. CV F 09-1584 LJO DLB, 2009 WL 3126400 (E.D. Ca. Sept. 24, 2009) ........................................................... 25

*Rubio v. Capital One Bank (USA), N.A.*, 572 F. Supp. 2d 1157 (C.D. Cal. 2008) ..................... 11

*Russo v. NCS Peterson, Inc.*, 462 F. Supp. 2d 981 (D. Minn. 2006) ........................................... 32

*Schulken v. Washington Mut. Bank*, No. C 09-02708 JW, slip op. (N.D. Cal. Mar. 3, 2010) ................................................................................................... 16, 17, 18, 35

*Standfacts Credit Servs., Inc. v. Experian Info. Solutions, Inc.*, 405 F. Supp. 2d 1141 (C.D. Cal. 2005), *aff'd*, 294 Fed. Appx. 271 (9th Cir. 2008) ........................ 36

*Thompson v. American Tobacco Co.*, 189 F.R.D. 544 (D. Minn. 1999) ..................................... 32

*Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750 (7th Cir. 2002) .............................. 6

*Thorns v. Sundance Properties*, 726 F.2d 1417 (9th Cir. 1984) ................................................. 17

*Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954 (D. Minn. 2000) ................................... 32

*Villasenor v. Am. Signature, Inc.*, No. 06 C 5493, 2007 WL 2025739 (N.D. Ill. July 9, 2007) ................................................................................................. 33

*Walsh v. JPMorgan Chase Bank, N.A.*, No. 09-cv-04387, slip op. (C.D. Cal. Dec. 8, 2009) ("*Walsh I*") ..................................................................................... 16

*Walsh v. JPMorgan Chase Bank, N.A.*, No. 09-cv-04387, slip op. (C.D. Cal. March 5, 2010) ("*Walsh II*") ........................................................................ 25, 26

*Wilder v. JPMorgan Chase Bank, N.A.*, No. SACV 09-0834 DOC, slip op. (C.D. Cal. Nov. 25, 2009) ........................................................................... 18, 36

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ....................................................................... 19

*Zupancich v. U.S. Steel Corp.*, No. 08-5847 ADM/RLE, 2009 WL 1474772 (D. Minn. May 27, 2009) .................................................................................... 29

## State Cases

*Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210 (Tex. 1988) ...................................................... 22

*Aspen Advisors LLC v. United Artists Theatre Co.*, 843 A.2d 697 (Del. Ch. 2004) ................... 23

*Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005) ....................................... 32

*Brooks v. Valley Nat. Bank*, 548 P.2d 1166 (Ariz. 1976)............................................................29

*Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (Cal. 1999).....................................................................................................................................34, 35

*Cortez v. Purolator Air Filtration Prods Co.*, 23 Cal. 4th 163 (Cal. 2000)..............................29

*Elson v. State Farm Fire & Cas. Co.*, 691 N.E.2d 807 (1st Dist. 1998)...................................32

*English v. Fischer*, 660 S.W.2d 521 (Tex. 1983) .......................................................................22

*Erickson v. Horing*, No. C4-02-138, 2002 WL 31163611 (Minn. Ct. App. Oct. 1, 2002)..........................................................................................................................................33

*Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000)......................................29

*Ghirardo v. Antonioli*, 14 Cal. 4th 39 (Cal. 1996).....................................................................31

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317 (Cal. 2000)..............................................................23

*Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39 (Tex. 1992)...........................29

*Hofeld v. Nationwide Life Ins. Co.*, 322 N.E.2d 454 (Ill. 1975)...............................................19

*In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d 494 (Minn. 1995)..........................................................................................................................................23

*In re Tobacco II Cases*, 46 Cal. 4th 298 (Cal. 2009) ...........................................................32, 33

*Jackson v. South Holland Dodge, Inc.*, 755 N.E.2d 462 (Ill. 2001) ..........................................34

*Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872 (Del. Ch. 2009) ......................................23, 29

*Lanier v. Assocs. Fin., Inc.*, 499 N.E.2d 440 (Ill. 1986) ...........................................................34

*McBride v. Boughton*, 123 Cal. App. 4th 379 (Cal. Ct. App. 2004)..........................................28

*Melchior v. New Line Prod., Inc.*, 106 Cal. App. 4th 779 (Cal. Ct. App. 2003) ........................28

*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (Cal. Ct. App. 1999)..........................................................................................................................................36

*Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951 (Ill. 2002)........................................34

*Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107 (Cal. Ct. App. 2008)..................................................................................................................25

**Federal Statutes**

15 U.S.C. § 1602(h) ...........................................................................................16

15 U.S.C. § 1603(1) ...........................................................................................16

15 U.S.C. § 1640.................................................................................................18

15 U.S.C. § 1647(c) .....................................................................................passim

15 U.S.C. § 1647, Truth In Lending Act .............................................................1

28 U.S.C. § 2201.................................................................................................18

**Federal Rules**

Fed. R. Evid. 201(b)...........................................................................................10

Fed. R. Civ. P. 9(b) ..............................................................................31, 32, 33

**Federal Regulations**

12 C.F.R. § 226.2(a)(12) ....................................................................................16

12 C.F.R. § 226.3(a)...........................................................................................16

12 C.F.R. § 226.5b(f)(3)(vi) .............................................................3, 7, 12, 15

12 C.F.R. § 226.9(c) .................................................................................4, 25, 27

12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) ..................................................passim

**Other Authorities**

FDIC May 16, 2005 Financial Institution Letter (FIL-45-2005) *Credit Risk Management Guidance for Home Equity Lending* ...........................................10

OTS, *Home Equity Line of Credit Account Management Guidance* ...........................................10

Truth in Lending: Proposed Rule, 74 Fed. Reg. 43,492 (Aug. 26, 2009)..............................4, 8, 9

Plaintiffs William Cavanagh, Robert and Maria Frank, Shannon Hackett, Michael Malcolm, Daryl Mayes, Michael Walsh, and Robert Wilder ("Plaintiffs") allege Defendant JPMorgan Chase Bank, N.A. ("Chase") wrongfully suspended or reduced the credit limits on their home equity lines of credit ("HELOCs") in violation of the Truth in Lending Act, 15 U.S.C. § 1647 ("TILA") and its implementing Regulation Z. The TILA and Regulation Z provisions governing HELOC suspensions in this context are straightforward: TILA permits a creditor to suspend or reduce a HELOC during the period in which the value of the borrower's property is significantly less than the original value. Regulation Z acknowledges that what constitutes a "significant decline" in the value of a property will vary according to individual circumstances.

Attempting to avoid the individual issues that would necessarily defeat class treatment of their claims, Plaintiffs clutter their complaint with a number of extraneous theories that find no support in TILA, Regulation Z or their HELOC agreements. Despite Plaintiffs' attempt to rewrite the statute, the inescapable primary liability issue in this case is whether each Plaintiffs' property value experienced a significant decline based on their individual circumstances. Plaintiffs' allegations – that Chase suspended their HELOC lines based on "inaccurate" automated valuation models ("AVMs"), impermissible "triggering events," or without a "sound factual basis" – are all theories that are not actionable under TILA and Regulation Z or their HELOC agreements. Because Plaintiffs' theories read non-existent prohibitions and requirements into TILA, Regulation Z and their HELOC agreements, these claims should be dismissed.

## ALLEGATIONS IN COMPLAINT

Plaintiffs obtained seven separate HELOCs from Chase or other entities between April 2003 and February 2008. (Consolidated Amended Class Action Complaint ("CAC") ¶¶ 23-29,

36, 42, 50, 65, 71, 87, 94.) Plaintiffs' HELOCs were secured by their primary residences located in Minnesota, California, Illinois, Texas, and Arizona. (*Id.*, ¶¶ 23-29.)

Plaintiffs' HELOC agreements include provisions permitting Chase to suspend additional extensions of credit or reduce the HELOC credit limit where, among other things, the value of the property securing the HELOC significantly declines. (*See* Cavanagh HELOC Agreement at 5; Frank HELOC Agreement at 5; Hackett HELOC Agreement at ¶ 18; Malcolm HELOC Agreement at 4; Mayes HELOC Agreement at 4; Walsh HELOC Agreement at 5; Wilder HELOC Agreement at 4, CAC Group Exhibit A.)

Between December 2008 and November 2009, Chase sent Plaintiffs letters informing them that it had either reduced the credit limits on their HELOCs, or suspended future draws. (*See* CAC Group Exhibit B.) While they vary, each letter informed Plaintiffs that Chase was taking the action on Plaintiffs' HELOCs because of a significant decline in Plaintiffs' property values. The letters notified Plaintiffs that they could appeal this decision, and gave them information on how to appeal. (*Id.*) All of the Plaintiffs either appealed the actions, or contacted Chase to challenge the decisions. (CAC ¶¶ 38, 44, 48, 54-55, 67, 69, 75-78, 89, 96, 101.) Some of the Plaintiffs obtained appraisals showing their property values had recovered, and Chase reinstated those Plaintiffs' HELOCs. (*E.g.*, Cavanagh, Malcolm, Wilder; *id.*, ¶¶ 39, 69, 101.) Other Plaintiffs complained to Chase, but did not obtain the appraisals necessary for Chase to consider their reinstatement requests. (*E.g.*, Frank, Walsh; *id.*, ¶¶ 42-49, 87-93.) Finally, some Plaintiffs obtained appraisals of their properties, but Chase considered those appraisals and determined that they were insufficient to reinstate those Plaintiffs' HELOCs. (*E.g.*, Hackett, Mayes; *id.*, ¶¶ 55-56, 77-78.) For convenience, a chart summarizing Plaintiffs' allegations regarding the origination of the HELOCs and the subsequent actions is attached as Exhibit A.

Based on these and other allegations, Plaintiffs challenge the suspension and reduction of the credit limits on their HELOCs.

## LEGAL AND REGULATORY BACKGROUND

To the extent they apply, TILA and Regulation Z provide the statutory framework for Plaintiffs' challenges to their HELOC suspensions. While TILA is generally a statute that only requires disclosures, TILA imposes certain substantive restrictions for consumer HELOC lending.

**Suspensions of Extension of Credit.** TILA regulates the changes a creditor can make to the terms of an "open end consumer credit plan … secured by a consumer's principal dwelling." *See* 15 U.S.C. § 1647(c)(1). Relevant here, a creditor can prohibit additional extensions of credit "during any period in which the value of the consumer's principal dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling." *See* 15 U.S.C. § 1647(c)(2)(B); *see also* 12 C.F.R. § 226.5b(f)(3)(vi)(A). The Federal Reserve Board's Official Commentary to Regulation Z ("Official Commentary")[1] explains that what constitutes a "significant decline" in a property's value "will vary according to individual circumstances." *See* 12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 6. The Official Commentary also provides a "safe harbor" recognizing a *per se* "significant decline" where the property value declines "such that the initial difference between the credit limit and the available equity (based on the property's appraised value for purposes of the plan) is reduced by fifty percent…." *See*

---

[1] "Congress delegated broad administrative lawmaking power to the Federal Reserve Board when it framed TILA" and "has specifically designated the Federal Reserve Board and staff as the primary source for interpretation and application of truth-in-lending law." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566 (1980). The Official Commentary is entitled to deference and "[u]nless demonstrably irrational, Federal Reserve Board staff opinions construing [TILA] or Regulation [Z] should be dispositive…" *Id.* at 565.

12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 6. The Official Commentary includes the following illustration of a significant decline within this "safe harbor":

> [A]ssume that a house with a first mortgage of $50,000 is appraised at $100,000 and the credit limit is $30,000. The difference between the credit limit and the available equity is $20,000, half of which is $10,000. The creditor could prohibit further advances or reduce the credit limit if the value of the property declines from $100,000 to $90,000.

*Id.* This, however, is just a safe harbor and "less dramatic declines also may be 'significant' based on the individual circumstances." *Malcolm v. JPMorgan Chase Bank, N.A.*, No. 09-4496-JF (PVT), 2010 WL 934252, at *5 (N.D. Cal. March 15, 2010).

**Valuing Borrower Property.** Regulation Z "does not require a creditor to obtain an appraisal before suspending credit privileges although a significant decline must occur before suspension can occur." 12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 6. Because appraisals are not required, lenders may use other valuation methods, including AVMs. The Federal Reserve Board's proposed revision to the Official Commentary "clarif[ies] that appropriate property valuation methods … may include, but are not limited to" AVMs. *See* Truth in Lending; Proposed Rule, 74 Fed. Reg. 43,428, 43,492 (Aug. 26, 2009).

**Notice to Borrower of Suspension.** When a creditor suspends or reduces a HELOC because of a significant decline in value, Regulation Z requires the creditor to notify the borrower of the action. Those notices must (i) "contain specific reasons for the action;" and (ii) "[i]f the creditor requires the consumer to request reinstatement of credit privileges, the notice also shall state that fact." 12 C.F.R. § 226.9(c)(1)(iii).

**Appeal and Reinstatement of Suspension.** The Official Commentary prohibits a lender from *terminating* a HELOC – as opposed to temporarily suspending further extensions of credit – because of a decline in property value. Rather, the lender can prohibit additional extensions "only while one of the designated circumstances exists." 12 C.F.R. Part 226, Supp. I,

¶ 5b(f)(3)(vi) at 2. When that circumstance ceases to exist – for example, if the borrower presents evidence that her property value recovered – then "credit privileges must be reinstated, assuming that no other circumstance permitting such action exists at that time." *Id*. "Creditors are responsible for ensuring that credit privileges are restored as soon as reasonably possible after the condition that permitted the creditor's action ceases to exist." 12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 4. A creditor can satisfy this obligation by "investigat[ing] the condition frequently enough to assure itself that the condition permitting the freeze continues to exist." *Id*. Alternatively, "the creditor may shift the duty to the consumer to request reinstatement" by giving the consumer notice of that obligation. *Id*. "Once the consumer requests reinstatement, the creditor must promptly investigate to determine whether the condition allowing the freeze continues to exist. Under this alternative, the creditor has a duty to investigate only upon the consumer's request." *Id*. When a borrower requests reinstatement, the Official Commentary permits the lender to collect "bona fide and reasonable appraisal fees … actually incurred in investigating whether the condition permitting the freeze continues to exist." 12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 3.

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations omitted). This means a complaint must set forth enough facts "'to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). On a motion to dismiss, the "court accepts all of the Plaintiffs' factual allegations … as true, but does not accord the same deference to abstract recitations of the elements of a cause of action or conclusory legal statements." *Duffy v.*

*Ticketreserve, Inc.*, No. 09 C 1746, 2010 WL 2681045, at *6 (N.D. Ill. July 6, 2010).  Rather, "legal conclusion[s]" or "naked assertion[s]" are "not entitled to the assumption of truth" and must be disregarded.  *Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555, 557.  Moreover, a plaintiff can plead herself out of court by alleging facts or attaching documents to the complaint showing she is not entitled to relief.  *See Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753-54 (7th Cir. 2002).

## ARGUMENT

### I.    PLAINTIFFS' TILA CLAIMS FAIL (COUNTS I-II).

Plaintiffs' TILA claims fail because Plaintiffs attempt to graft on to TILA and Regulation Z requirements and prohibitions not present in the text of those laws.  Plaintiffs claim that Chase violated TILA when Chase did or did not do a number of things when it suspended or reduced the credit limits of their HELOCs, but neither TILA nor Regulation Z prohibits much of the conduct of which Plaintiffs complain.  Absent some statutory or regulatory text prohibiting the conduct alleged in the complaint – or requiring Chase to take the acts Plaintiffs say Chase failed to take – Plaintiffs' TILA claims should be dismissed for failure to state a claim.  Indeed, Judge St. Eve recently rejected similar claims attempting to allege TILA violations independent of a "significant decline;" she concluded that TILA and Regulation Z "limit liability to instances where a significant decline in value has not occurred," and that those laws do not generally prohibit other conduct Plaintiffs find objectionable.  *Hickman v. Wells Fargo Bank N.A.*, 09 C 5090, slip op. at 3-4 (N.D. Ill. May 11, 2010) ("*Hickman II*") (dismissing claim that defendant lacked a "sound factual basis" for concluding significant decline had occurred) (attached as Exhibit B).

In order "to state a claim for violation of TILA and Regulation Z based on a HELOC suspension, Plaintiff must sufficiently allege that (i) Defendant reduced his HELOC (ii) during a period in which the value of his property did not decline to 'significantly less than the original appraised value of the dwelling.'" *See Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 785 (N.D. Ill. 2010) ("*Hickman I*"); *see also* 15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A). As explained below, Plaintiffs' alternative theories for imposing TILA liability for their suspensions contain no statutory basis and thus fail to state a claim.

### A. TILA Does Not Require Chase To Consider The Level Of Available Equity In Plaintiffs' Properties.

Plaintiffs allege Chase violated TILA and Regulation Z "by failing to first determine the level of available equity in" Plaintiffs' properties "before concluding that the values of the properties actually declined significantly." (*See* CAC ¶ 121.) This allegation fails as a matter of law because TILA does not require Chase to consider available equity when determining whether there was a "significant decline" in property value. Property values can, of course, suffer significant declines independently of the amount of equity that a borrower has in her property. There is nothing in TILA or Regulation Z requiring a lender to consider the available equity in a property, or a borrower's primary mortgage balance, in determining whether a property value experienced a significant decline.

Plaintiffs' theory fails to state a TILA violation because it conflates what a borrower must show to establish a violation (that her property value did not significantly decline) with what a lender must show to be entitled to the protection of the Regulation Z "safe harbor." TILA provides that a lender can suspend a HELOC where the property value declines significantly; it does not require that a borrower's "available equity" decline. The Official Commentary to Regulation Z emphasizes that what constitutes a "significant" decline "will vary according to

individual circumstances," but the Commentary also contains a "safe harbor" for such determinations. *See* 12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 6. The "safe harbor" establishes a *per se* "significant decline" where the property value declines "such that the initial difference between the credit limit and the available equity (based on the property's appraised value for purposes of the plan) is reduced by fifty percent…." *Id.* Thus, to show that a decline fell within that safe harbor, the lender can point to a fifty percent decline in the "available equity." *Id.* But the safe harbor is not the *only* permitted measure of "significant decline," nor does it establish a *minimum* decline, it is only a safe harbor: "less dramatic declines also may be 'significant' based on the individual circumstances." *Malcolm*, 2010 WL 934252 at *5. Plaintiffs' attempt to impose liability for a failure to consider "available equity" fails because there is no statutory or regulatory support in TILA or Regulation Z for a requirement that the lender consider available equity to determine property value decline. *Hickman II*, slip op. at 3-4 (dismissing TILA claim that lacked statutory or regulatory basis).[2]

---

[2] Plaintiffs' "available equity" theory not only fails to state an affirmative TILA claim, but would also fail as a challenge to a lender's "safe harbor" defense. The safe harbor defense does *not* require consideration of the balance of the primary mortgage in determining whether a property experienced a significant decline in value. Recent proposed revisions to the Official Commentary "clarif[y] that in determining whether a decline results in a 50 percent equity cushion reduction [the safe harbor described above], the creditor *may, but does not have to*, consider any changes in available equity based on the status of the first mortgage." *See* Truth in Lending; Proposed Rule, 74 Fed. Reg. 43,428, 43,491 (Aug. 26, 2009) (emphasis added). This clarification remains consistent with the existing Official Commentary, which requires lenders to consider "the *initial* difference between the credit limit and the available equity" and recognizes a significant decline in value when the property's value falls by fifty percent of that *initial* difference. *See* 12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 6 (emphasis added). Likewise, the illustration demonstrating a decline in value within the "safe harbor" does not factor any change in the balance of the borrower's first mortgage. *See id.* Thus, neither the current Official Commentary nor the proposed revisions require lenders to consider the level of available equity in borrowers' homes to demonstrate a "safe harbor" significant decline.

**B.     TILA Does Not Prohibit The Use Of AVMs Or Make Actionable The Use Of "Unreasonable" AVMs, And Plaintiffs Fail To Allege How The AVMs Were Flawed.**

Plaintiffs also claim Chase violated TILA by using "flawed," "unreasonable," "inaccurate," and "unreliable" AVMs to value their properties. (*See* CAC ¶¶ 116-120.)  Plaintiffs claim the AVMs "were based on flawed statistical modeling" resulting in "the unreasonable undervaluation of a substantial number of properties." (*Id.* ¶ 117.)  Plaintiffs' TILA claims based on these allegations fail because neither TILA nor Regulation Z prohibits the use of AVMs to value properties, nor do TILA and Regulation Z make actionable allegedly using "unreasonable" AVMs.

Plaintiffs do not – and cannot – challenge Chase's *use* of AVMs.   The Official Commentary specifies that Regulation Z "does not require a creditor to obtain an appraisal before suspending credit privileges although a significant decline must occur before suspension can occur." 12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 6.  Lenders are therefore permitted to use other valuation methods, such as AVMs.  The Federal Reserve Board's proposed revisions to the Official Commentary, "clarify that appropriate property valuation methods may include, but are not limited to" AVMs.  *See* Truth in Lending: Proposed Rule, 74 Fed. Reg. 43,428, 43,492 (Aug. 26, 2009).

Instead of challenging Chase's use of AVMs, Plaintiffs allege Chase violated a requirement – nowhere mentioned in TILA, Regulation Z, or the Official Commentary – that Chase validate, back-test, and verify AVMs.[3] Plaintiffs allege Chase must:

> (1) disclose the value of the property at the origination of the HELOCs, the value necessary to reinstate the HELOCs, and the reasoning behind the use of those values; (2) validate the AVMs on a periodic basis to mitigate the potential

---

[3] Should these claims survive dismissal, discovery will show the extensive efforts Chase took to validate the AVMs it used to value properties securing HELOCs.

valuation uncertainty; (3) properly document the validation's analysis, assumptions, and conclusions; (4) appropriately back-test representative samples of the valuations against market data on actual sales; (5) account fairly for improvements, property type or geographic comparables; and/or (6) take other necessary steps to reasonably verify the accuracy of the valuations.

(CAC ¶ 118.) These allegations are not based on any requirement of TILA or Regulation Z. Rather, they are a summary recitation of a "non-binding Federal Deposit Insurance Corporation ('FDIC') supervisory guidance document." *Hickman II*, slip op. at 4.[4]

Here, Plaintiffs' claim fails because the FDIC guidance does not establish TILA requirements. *Hickman II*, slip op. at 4. Referencing the same FDIC guidance and a separate Office of Thrift Supervision ("OTS") management guidance document,[5] the plaintiff in *Hickman II* argued that "the sound factual basis" language of the OTS guidance document imposed a TILA duty to have a "sound factual basis" for suspending a HELOC. Judge St. Eve squarely rejected

---

[4] The FDIC and other regulatory agencies jointly issued risk management guidance on the use of AVMs to assess the collateral value in home equity lending. (*See* FDIC May 16, 2005 Financial Institution Letter (FIL-45-2005) *Credit Risk Management Guidance for Home Equity Lending*, attached as Exhibit H.) Under that guidance, financial institutions using AVMs to assess the collateral value in home equity lending should:

- validate the models on a periodic basis to mitigate the potential valuation uncertainty in the model;
- document the validation's analysis, assumptions, and conclusions;
- back-test a representative sample of the valuations against market data on actual sales (where sufficient information is available); and
- enact a validation process that covers properties representative of the geographic area and property type for which the tool is used.

(*Id*. at 4.) This interagency letter provides guidance in the context of "sound risk management practices at financial institutions with home equity lending programs." (*Id*. at 2.) This interagency guidance refers to AVMs, validating models and back-testing, but does not purport to address their use in the context of suspending or reducing HELOCs, nor does it purport to interpret TILA or Regulation Z.

The Court may take judicial notice of this FDIC guidance and other agency guidance documents, which are published on the agencies' official websites. *See* Fed. R. Evid. 201(b) (court may take judicial notice of facts "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *Laborers' Pension Fund v. Blackmore Sewer Constr.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information from FDIC's official website); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (a district court may take judicial notice of matters of public record on a Rule 12(b)(6) motion to dismiss).

[5] *See* OTS, *Home Equity Line of Credit Account Management Guidance*, http://www.ots.treas.gov/_files/481121.pdf, attached as Exhibit I.

the plaintiff's attempt to convert the OTS and FDIC guidance language into a TILA requirement: "Contrary to Plaintiff's assertion, neither of these provisions imposes a requirement on Defendant to have a 'sound factual basis' for its decision to reduce a HELOC." *Hickman II*, slip op. at 4. Refusing to supplement TILA with FDIC and OTS regulatory guidance language, the Court further held that "[o]nly 'the Official Commentary to TILA and Regulation Z is controlling in this context.'" *Id.* (*quoting Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525, 528 (7th Cir. 2007)).

Here, Plaintiffs' attempt to convert allegations of a purported lack of compliance with non-binding regulatory guidance into a TILA violation fails because neither TILA nor Regulation Z contains any requirements regarding validating, back-testing or verifying AVM models. *Hickman II*, slip op. at 4; *see also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 562 (1980) (declining to stretch Regulation Z's "provisions beyond their obvious limits"); *see also Rubio v. Capital One Bank (USA), N.A.*, 572 F. Supp. 2d 1157, 1167 (C.D. Cal. 2008) (dismissing complaint where plaintiff did not identify violation of TILA; declining to substitute its "own interstitial lawmaking for that of the Federal Reserve" (citations omitted)), *rev'd on other grounds*, 613 F.3d 1195 (9th Cir. 2010). Moreover, even if TILA or Regulation Z contained substantive requirements on the use of AVMs (they do not), simply restating the joint agency guidance is not a substitute for alleging factual matter supporting the conclusory allegation that Chase used flawed or inaccurate AVMs. *See Iqbal*, 129 S. Ct. at 1949 (A "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action' will not do.").

### C.  Plaintiffs' TILA Claims Alleging Chase Relied On Unlawful "Triggering Events" Fail.

The Official Commentary prohibits a lender from using "triggering events" different from those provided in Regulation Z – for example, by suspending a HELOC due to an insignificant

decline in property value.  12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(i) at 2.  Plaintiffs' claim that Chase used improper "triggering events" fails because it purports to impose TILA prohibitions beyond those contained in TILA or Regulation Z.  Here, Plaintiffs claim Chase used unlawful "triggering events" by (1) suspending or reducing HELOCs in response to a 5% decline in property value; and (2) setting more stringent combined loan-to-value ("LTV") ratios than used at the time of origination.[6]  (CAC ¶¶ 123-125.)  Plaintiffs' TILA claims based on this theory fail for at least two reasons.

*First*, TILA and Regulation Z do not provide any threshold value defining what constitutes a "significant decline" in property value.  TILA does not provide, for example, that a "significant decline" occurs only where the property value declines by 10% or more.  All TILA requires for reducing or suspending a HELOC is that the "value of the consumer's principal dwelling which secures any outstanding balance [must be] significantly less than the original appraisal value of the dwelling."  15 U.S.C. § 1647(c)(2)(B); *see also* 12 C.F.R. § 226.5b(f)(3)(vi)(A).  The Official Commentary explains that what constitutes a significant decline "will vary according to individual circumstances" and prohibits a lender from suspending or reducing a HELOC credit limit based on an "insignificant decline in property value." *See* 12 C.F.R. Part 226, Supp. I ¶ 5b(f)(3)(i) at 2; 12 C.F.R. Part 226, Supp. I ¶ 5b(f)(3)(vi) at 6.  If TILA or Regulation Z did include a provision recognizing only a 10% decline as "significant" – and they do not – then a lender could not suspend based on a smaller decline.  However, because TILA and Regulation Z do not set hard rules defining a "significant decline," a lender is free to

---

[6] According to Plaintiffs, a "combined LTV ratio is the ratio between the encumbrances on a property (*e.g.*, a first mortgage and a HELOC) and the value of the property.  The difference between the value of the property and the total encumbrances on the property constitutes the available equity in the property.  Thus, the lower the LTV ratio, the more available equity in the property and, consequently, the less risky the loan."  (CAC ¶ 13, n. 3.)

consider the individual circumstances surrounding the decline – including, as Plaintiffs allege, the amount of the decline as well as the available combined LTV. Under TILA and Regulation Z, if the individual circumstances confirm that a decline in property value is significant, a lender may suspend a HELOC. Here, Plaintiffs fail to state a claim because they have not alleged that, in their particular circumstances, a 5% decline was not a "significant decline" in value. *See* 12 C.F.R. Part 226, Supp. I ¶ 5b(f)(3)(vi) at 6; *see also Hickman I*, 683 F. Supp. 2d at 785 ("to state a claim for violation of TILA and Regulation Z, Plaintiff must sufficiently allege that (i) Defendant reduced his HELOC (ii) during a period in which the value of his property did not decline to 'significantly less than the original appraised value of the dwelling.'"). Plaintiffs' claim that a suspension based on a 5% decline in property value is a *per se* violation of TILA has no basis in TILA or Regulation Z.

*Second*, Plaintiffs lack standing to challenge any alleged HELOC suspension based on a 5% decline in property value because each Plaintiff alleges Chase suspended or reduced their HELOCs based on a decline property value in excess of 5%. (*See* CAC ¶¶ 36-37 (Cavanagh's property value decreased by 23%); ¶ 47 (Franks' property value decreased by 11%); ¶¶ 50, 52 (Hackett's property value decreased by 20%); ¶¶ 66, 69 (Malcolm's property value decreased by 17%); ¶¶ 71, 76 (Mayes' property value decreased by 12%); ¶ 91 (Walsh's property value decreased by 7%); ¶¶ 94, 99 (Wilder's property value decrease by 10%).) To challenge an alleged policy of suspending a HELOC based on a 5% decline in property value, Plaintiffs would have to allege and prove that they were injured by this alleged policy, something they cannot do. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (requiring that to have standing: (1) plaintiff must have suffered an injury-in-fact that is concrete and particularized, and actual or imminent; (2) the injury must have been caused by the alleged action of the defendant; and (3) it

13

must be likely that the injury will be "redressed by a favorable decision"); *Pollack v. U.S. Dept. of Justice*, 577 F.3d 736, 743 (7th Cir. 2009) (dismissing claim where plaintiffs failed to allege that they suffered concrete, particularized harm as a result of defendant's activities); *Plotkin v. Ryan*, 239 F.3d 882, 885-86 (7th Cir. 2001) (plaintiff lacked standing because the increased risk of accident he allegedly suffered as a result of allowing unqualified commercial drivers permitted on Illinois highways was not an injury in fact).

**D.**      **Plaintiffs' TILA Claims Alleging Chase Lacked A "Sound Factual Basis" To Suspend Or Reduce Their HELOCs Fail.**

Plaintiffs also allege Chase violated TILA and Regulation Z by suspending or reducing their HELOCs without a "sound factual basis." (CAC ¶¶ 12, 57, 81, 119.) As discussed above, TILA and Regulation Z do not impose "a requirement on Defendant to have a 'sound factual basis' for its decision to reduce a HELOC." *Hickman II*, slip op. at 4 (dismissing with prejudice TILA claim alleging defendant "lacked a sound factual basis" to reduce a HELOC). Plaintiffs cannot point to any controlling authority imposing a "sound factual basis" requirement on HELOC suspensions and their TILA claims based on this allegation should be dismissed. *Id.*[7]

**E.**      **Plaintiffs Fail to Adequately Allege That Their Property Values Did Not Significantly Decline Or That Chase Improperly Refused To Reinstate Their HELOCs.**

TILA and its implementing Regulation Z permit a creditor to prohibit additional extensions of credit on a HELOC "during any period in which the value of the consumer's principal dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling." *See* 15 U.S.C. § 1647(c)(2)(B); 12 C.F.R.

---

[7] While there is no TILA requirement that a lender have a "sound factual basis" to suspend HELOC accounts, Chase's motion should not be construed as an indication that Chase does not believe that it has a sound factual basis to suspend accounts. Should this claim survive dismissal, discovery will show that Chase had a sound factual basis to suspend or reduce Plaintiffs' HELOCs.

§ 226.5b(f)(3)(vi)(A).  Plaintiffs fail to adequately allege a TILA violation because they allege no facts suggesting their property value did not significantly decline.

Plaintiffs merely allege that when "Chase suspended or reduced their HELOC accounts, the value of Plaintiffs' and Class members' homes had not 'significantly' declined relative to the value at the time of the HELOC origination.  In fact, the value of many of the Class members' homes declined only marginally, did not decline at all, or actually increased…" (*See* CAC ¶ 115.)  These are exactly the type of "[t]hreadbare recitals" that fail to state a cognizable claim for relief.  *See Iqbal*, 129 S. Ct. at 1940, *Twombly*, 550 U.S. at 555.

Contrary to Plaintiffs' legal conclusions, the facts Plaintiffs do plead demonstrate a significant decline in value.  All of the Plaintiffs allege that Chase obtained and relied on a valuation showing their property values fell between 7% and 23%.  (*See* CAC ¶¶ 36-37, 47, 50, 52, 66, 69, 71, 76, 91, 94, 99.) They plead nothing suggesting that these declines were not "significant."  *See Iqbal*, 129 S. Ct. at 1949 (To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.") (*quoting Twombly*, internal citations omitted).

While some Plaintiffs (Cavanagh, Malcolm, and Wilder) allege that they subsequently obtained appraisals showing their properties' values had recovered to support reinstatement, these allegations likewise fail to establish a TILA violation. (CAC ¶¶ 39, 69, 101.) TILA and Regulation Z permit a lender to suspend future draws from a HELOC where the property value declines.  They also require the lender to reinstate the line if the property value recovers.  *See* 12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 2 (a lender can prohibit additional extensions "only while one of the designated circumstances exists").  If a borrower could allege a TILA violation any time he subsequently obtained an appraisal warranting reinstatement, this would gut the

TILA and Regulation Z provisions permitting the lender to suspend the line. Any time the creditor reinstates the line because a subsequent valuation shows the property value recovered – a process TILA and Regulation Z require – the borrower could claim that the creditor's suspension violated TILA by arguing that the subsequent valuation showed there was no significant decline in the first place.

In addition, Plaintiffs' allegation that Chase wrongfully refused to reinstate their lines fails. As an initial matter, Plaintiffs Cavanagh, Malcolm, and Wilder admit Chase reinstated their lines. (CAC ¶¶ 39, 69, 101.) The remainder of the Plaintiffs either do not allege that they obtained appraisals or pursued an appeal (Franks, Walsh), or allege that they obtained appraisals confirming the decline in their property value (Hackett, Mayes). (*Id.*, ¶¶ 48, 61, 77, 87-93.)

### F. Plaintiffs Fail To Adequately Allege Their HELOCs Were Used For Primarily Personal, Family, Or Household Purposes.

Finally, Plaintiffs' TILA claims fail because Plaintiffs have not sufficiently alleged that their HELOCS were used for primarily personal, family, or household purposes. "Whether a HELOC was issued to a plaintiff 'primarily for personal, family, or household purposes' is an element of any TILA claim and therefore must be properly alleged in the complaint." *See Walsh v. JPMorgan Chase Bank, N.A.*, No. 09-cv-04387, slip op. at 3 (C.D. Cal. Dec. 8, 2009) ("*Walsh I*") (attached as Exhibit C); *see also* 15 U.S.C. § 1647(c) (governing "open end consumer credit plan[s]"); 15 U.S.C. § 1602(h) (defining "consumer" when used with reference to a credit transaction); 12 C.F.R. § 226.2(a)(12) (Under Regulation Z, "[c]onsumer credit means credit offered or extended to a consumer primarily for personal, family, or household purposes."). TILA expressly does *not* apply to transactions involving "primarily for business, commercial, or agricultural purposes." *See* 15 U.S.C. § 1603(1); 12 C.F.R. § 226.3(a); *see also Schulken v. Washington Mut. Bank*, No. C 09-02708 JW, slip op. at 5-6 (N.D. Cal. Mar. 3, 2010) (granting

motion to dismiss TILA claims where plaintiffs failed to allege that their HELOCs were used primarily for personal, family, or household purposes) (attached as Exhibit D); *Galindo v. Financo Fin., Inc.*, No. C 07-03991 WHA, 2008 WL 4452344, at *4, (N.D. Cal. Oct. 3, 2008) (dismissing plaintiff's TILA claim where he alleged no facts detailing the purposes of the loan). Moreover, whether credit is for a personal or a business purpose requires a case by case analysis and thus a plaintiff must allege facts detailing the purposes of the loan. *Schulken*, slip op. at 5 (*citing Thorns v. Sundance Properties*, 726 F.2d 1417, 1419 (9th Cir. 1984)).

Conclusory allegations that simply restate statutory language and/or list one possible use of the HELOC are insufficient to demonstrate that the HELOC was issued primarily for personal, family, or household purposes. *See Schulken*, slip op. at 6 (finding allegations insufficient where plaintiffs alleged that their HELOC was obtained primarily for personal, family, and household purposes, "including renovations"); *Hamilton v. Wells Fargo Bank, N.A.*, No. 09-04152 CW, 2010 WL 1460253, at *2 (N.D. Cal. Apr. 12, 2010) (finding plaintiffs' allegation that the HELOC was used for "basic expenses" insufficient to demonstrate that the HELOC was used primarily for personal, family, and household purposes).

Here, Plaintiffs allege no facts demonstrating that their HELOCs were primarily for personal, family, or household purposes. Plaintiffs Cavanagh and Malcolm simply make the legal conclusion that they obtained their HELOCs "primarily for personal and household purposes." (CAC ¶¶ 23, 26.) Such legal conclusions are "not entitled to the assumption of truth" and therefore must be disregarded on this motion to dismiss. *Iqbal*, 129 S. Ct. at 1950; *see also Schulken*, slip op. at 6 ("The Court cannot reasonably infer that Plaintiffs' HELOC was primarily for a personal, family, or household purpose based solely upon Plaintiffs' recitation of TILA's statutory text.").

Plaintiffs Frank, Hackett, Mayes, Walsh, and Wilder allege little more. They allege they obtained their HELOC for "primarily for personal and household purposes, including" alleged uses of the HELOC. (CAC ¶¶ 24-25, 27-29.) But such allegations have been rejected by courts as insufficient to detail the purposes of the loan. As the *Schulken* court explained:

> Plaintiffs' use of the term "including" implies that Plaintiffs' HELOC was partly for home renovation purposes, but does not show that it was *the primary purpose*. Since Plaintiffs allege only that the purpose of the HELOC was partly, and not primarily, for home renovation, Plaintiff cannot meet a threshold requirement of a TILA claim.

*Schulken*, slip op. at 6 (emphasis added); *see also Hamilton*, 2010 WL 1460253 at *2 (holding that plaintiff's conclusory allegations that her HELOC was for "basic expenses" failed to state a TILA claim). Indeed, Plaintiffs' allegations only suggest they used *part* of their HELOCs for home renovations, taxes, personal expenses, and household items. Without more, Plaintiffs fail to plead facts pushing their TILA claims past "the line between possibility and plausibility of 'entitlement to relief.'" *See Iqbal*, 129 S. Ct. at 1949; *see also Wilder v. JPMorgan Chase Bank, N.A.*, No. SACV 09-0834 DOC, slip op. at 4 (C.D. Cal. Nov. 25, 2009) ("Plaintiff has failed to allege that the purpose of the loan was consumer credit and has thereby failed to state a claim as to violations of TILA or Regulation Z.") (attached as Exhibit E).

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR DECLARATORY RELIEF UNDER TILA (COUNT II).

Plaintiffs' Count II claim for declaratory relief under 28 U.S.C. § 2201, as an alternative to finding Chase liable for damages under Count I, fails for the same reasons Count I fails as outlined above. The Court should also dismiss Count II because TILA's comprehensive scheme of remedies set forth in 15 U.S.C. § 1640 provides a complete remedy for Plaintiffs, and Plaintiffs do not allege that those remedies are inadequate. Where a claim seeking declaratory relief serves no useful purpose or where another remedy is more appropriate, the Court has

discretion to decline to hear the claim seeking declaratory relief. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *City of Highland Park v. Train*, 519 F.2d 681, 693 (7th Cir. 1975) ("While the availability of another remedy does not preclude declaratory relief, a court may properly decline to assume jurisdiction in a declaratory action when the other remedy would be more effective or appropriate."); *Hickman I*, 683 F. Supp. 2d at 790 (dismissing TILA claim seeking declaratory relief "because TILA presents comprehensive remedies to Plaintiff and the class"); *but see Hickman II*, 09 C 5090, slip op. at 4-5. Here, Plaintiffs bring Count I seeking damages for the same conduct complained of in Count II. Consequently, Count II serves no useful purpose and should be dismissed.

### III. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT BECAUSE THEY ALLEGE NO FACTS SHOWING THAT CHASE BREACHED THE HELOC AGREEMENTS (COUNT III).

Plaintiffs' breach of contract claims are based in large part on the same allegations in their TILA claims. (*See* CAC ¶¶ 133-145.) These contract claims fail as a matter of law because Plaintiffs either do not identify any contract provision breached, or because Plaintiffs fail to allege facts suggesting Chase breached any HELOC agreements – an element for a breach of contract claim under the laws of the five states governing Plaintiffs' HELOC agreements.[8]

#### A. Plaintiffs Fail To State A Claim For Breach Of Contract Because They Do Not Allege Any Contractual Provision Chase Allegedly Breached.

First, Plaintiffs' claim fails because as a threshold matter, because Plaintiffs do not allege what provisions of their HELOC agreements Chase allegedly breached. (*See* CAC ¶¶ 133-145.)

---

[8] Plaintiffs' HELOC agreements include choice of law provisions requiring the application of Minnesota law (Cavanagh), California law (the Franks, Malcolm, and Walsh), Delaware law (Hackett), Texas law (Mayes), and Arizona law (Wilder). A court exercising supplemental jurisdiction over state law claims should apply the choice of law rules of the forum state. *See Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 681 (7th Cir. 1986). Under Illinois law, where the parties to a contract express their intent that a specific state law applies, that intent should be followed. *See Hofeld v. Nationwide Life Ins. Co.*, 322 N.E.2d 454, 458 (Ill. 1975).

A claim for breach of contract requires a plaintiff to identify a provision allegedly breached.[9]

Here, Plaintiffs do not – and cannot – point to any contract provision prohibiting or requiring the alleged conduct that Plaintiffs challenge. As with their TILA claims, Plaintiffs allege that Chase breached their HELOC contracts by using inaccurate AVMs, not considering available equity, and using improper triggering events. (CAC ¶¶ 138-139, 140, 142.) However, nothing in Plaintiffs' HELOC agreements limits (or even mentions) what type of valuation Chase may rely on to value Plaintiffs' properties. Further, nothing in Plaintiffs' HELOC agreements requires Chase to consider the available equity in their properties, or prohibits (or even mentions) charging fees for faxing HELOC suspension notices.[10] Finally, Plaintiffs also cannot point to any provision in their HELOC agreements prohibiting Chase from determining that a 5% decline in property value is "significant," or regulating what LTV ratios Chase may or may not use. Therefore, Plaintiffs' breach of contract claims based on these allegations fail to state a claim. *See* n. 9, *supra*.

---

[9] *See, e.g., McCord v. Minnesota Mut. Life Ins. Co.*, 138 F. Supp. 2d 1180, 1189 (D. Minn. 2001) (dismissing breach of contract claim where plaintiffs failed to identify a specific provision of their contracts that was breached); *Love v. The Mail on Sunday*, No. CV057798ABCPJWX, 2006 WL 4046180, at *6-7 (C.D. Cal. Aug. 15, 2006) (requiring plaintiffs bringing contract claims to identify the specific contractual provision allegedly breached); *Levin v. Downey Sav. & Loan F.A.*, No. CV-09-1656-PHX-JAY, 2009 WL 4282471, at *5 (D. Ariz. Nov. 25, 2009) (dismissing breach of contract claim where plaintiff pled legal conclusions and failed to identify what provision of the contract was breached and what conduct breached it); *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007) *aff'd*, Nos. 09-2275, 09-2336. 2010 WL 3528903 (3d Cir. Sept. 13, 2010) (dismissing plaintiffs' breach of contract claim because they failed to identify any express provision of their mortgage contract defendant allegedly breached); *Blakeley v. Boltinghouse*, No. Civ.A. H-03-4901, 2005 WL 1185944, at *5 (S.D. Tex. May 4, 2005) (dismissing breach of contract claim where plaintiff failed to allege facts demonstrating which contract provision was breached and a breach thereof).

[10] Though the Court must accept Plaintiffs' repeated allegations of a "significant fee for faxing HELOC [] notices" as true for the purposes of this motion, Chase notes that Hackett is the only Plaintiff that alleges that she was charged this purported fee. Further, discovery will show that the fax fee Hackett says was charged to her primary mortgage for faxing a HELOC reduction notice (CAC ¶ 60) was really a fee for faxing a payoff quote in connection with Hackett paying off her primary mortgage when she refinanced it.

**B. Plaintiffs Fail To State A Claim For Breach Of Contract Based On Chase's Suspension And/Or Reduction Of Plaintiffs' HELOCs.**

Plaintiffs also base their breach of contract claims on their allegation that Chase suspended or reduced their HELOCs absent a significant decline in property value. (CAC ¶ 137.) As explained above, *supra* Section I(D), this conclusory allegation fails to state a claim because Plaintiffs do not allege facts making this claim plausible. Plaintiffs concede Chase obtained and relied on AVMs showing their properties declined in value, and they fail to allege sufficient factual matter casting doubt on those values.

**C. Plaintiffs Fail To State A Claim For Breach Of Contract Based On Chase Charging Plaintiffs An Annual Fee.**

Finally, Plaintiffs' breach of contract claim fails to the extent it is based on their allegation that Chase continued to assess "an Annual Fee for use of the HELOC accounts that had been unlawfully suspended." (CAC ¶ 141.) As an initial matter, *none of the Plaintiffs actually alleges that Chase charged them an Annual Fee after his or her HELOC was suspended.* Several Plaintiffs' accounts were reinstated; Hackett and Mayes are the only two Plaintiffs whose accounts were suspended and allegedly remain suspended.[11] Neither of them alleges Chase charged an Annual Fee after their HELOCs were suspended. Indeed, Mayes' HELOC agreement does not provide for the payment of an Annual Fee, so Mayes could not allege that Chase continued to charge an Annual Fee after the HELOC was suspended – his HELOC has no Annual Fee.

That leaves only Hackett, and her HELOC agreement expressly permits Chase to charge an annual fee unless she terminates the account and pays off the outstanding balance:

---

[11] Cavanagh, Malcolm, and Wilder admit Chase reinstated their HELOCs, thus they do not allege Chase charged an Annual Fee after their lines of credit were suspended. (CAC ¶¶ 39, 69, 101.) The Franks and Walsh allege only that Chase reduced their HELOC credit limits, and Plaintiffs' theory is that it violates the HELOC agreement to continue to charge an annual fee after a HELOC is "suspended" – not when the credit limit is reduced. (*Id.*, ¶¶ 43, 88, 141.)

> You agree to pay us a non-refundable Annual Participation Fee of $25.00 during the Draw Period and any extension of the Draw Period. Unless you terminate your Credit Account and pay the outstanding balance, the Annual Participation fee will be charged to your Credit Account Annually during the Draw Period....

(*See* Hackett HELOC Agreement at ¶ 14, CAC Group Exhibit A.) Hackett does not allege she terminated her HELOC and paid her outstanding balance. Thus, even if Chase did charge Hackett an Annual Fee after her HELOC was suspended – and she does not allege that it did – charging that Fee would not violate Hackett's HELOC agreement.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING BECAUSE THEY ALLEGE NO FACTS SHOWING THAT CHASE BREACHED THE HELOC AGREEMENTS.

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count IV) fares no better than their breach of contract claim. Indeed, an examination of the claim in light of the applicable law referenced in each named Plaintiffs' HELOC confirms that their implied contract claims fail.

### A. Mayes' Implied Covenant Claim Fails Because Texas Law (Which Governs His HELOC Agreement) Does Not Recognize Such A Claim Under These Circumstances.

Mayes' HELOC agreement contains a choice of law provision requiring the application of Texas law. (*See* Mayes HELOC Agreement at ¶ 21, CAC, Group Ex. A.) Texas courts, however, do not impose a contractual covenant of good faith and fair dealing in every contract. *See English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983) (refusing to adopt implied contractual covenant of good faith that neither party will do anything which injures the right of the other party to receive the benefits of the agreement). Instead, Texas recognizes a tort duty of good faith and fair dealing only in limited, specific situations, such as between an insurer and an insured. *See, e.g., Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 212-13 (Tex. 1988) (finding a special relationship exists between insurer and claimant, and imposing a tort duty of good faith

and fair dealing between the parties). Mayes does not allege any facts suggesting a special relationship with Chase imposing a duty of good faith and fair dealing. Consequently, his implied covenant claims should be dismissed.

**B.** **The Implied Covenant Claims of Cavanagh, the Franks, Malcolm, Walsh, And Hackett Fail Because Plaintiffs Do Not Identify Any Contract Provision On Which Their Claims Are Based.**

The claims of other Plaintiffs are governed by the laws of California (the Franks, Malcolm, and Walsh), Delaware (Hackett), and Minnesota (Cavanagh). These Plaintiffs' implied covenant claims fail because they have failed to identify a contract term creating an implied duty. *See Berger v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-50 (Cal. 2000) (explaining that the implied covenant of good faith and fair dealing will not impose duties or limits on the contracting parties beyond those addressed in the actual contract); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009) (stating elements of a claim for breach of an implied covenant as "a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff"); *Aspen Advisors LLC v. United Artists Theatre Co.*, 843 A.2d 697, 707 (Del. Ch. 2004) (the implied covenant should not be used to give plaintiffs "contractual protections" not addressed in the contract); *In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 503 (Minn. 1995) ("[T]he implied covenant of good faith and fair dealing does not extend to actions beyond the scope of the underlying contract."). Thus, the Franks, Malcolm, Walsh, Hackett and Cavanagh cannot state a claim for breach of implied covenant of good faith and fair dealing because they have not identified express contractual provisions on which to base their implied covenant claims. *See supra*, Section III(A). (CAC ¶¶ 146-162.)

### C. Plaintiffs Fail To State An Implied Covenant Claim Based On Chase's Suspension And Reduction Of Their HELOCs.

Even if Plaintiffs could otherwise satisfy the requirements for pleading an implied covenant claim under the relevant law – and they cannot – their implied covenant claims would still fail because they have failed to plead facts making those claims plausible. Plaintiffs claim Chase breached the implied covenant of good faith and fair dealing by suspending Plaintiffs' HELOCs based on "inaccurate and unreliable" valuation methods and when there was no significant decrease in the properties' value, without considering the available equity in Plaintiffs' property based on the balance of Plaintiffs' first mortgages, and by charging fees for faxing Plaintiffs' HELOC suspension and reduction notices. (*See* CAC ¶¶ 150-153.) As demonstrated above, *supra* Section III, Plaintiffs fail to allege sufficient factual allegations to state a plausible claim that Chase had a duty to use or not use specific valuation methods or that Plaintiffs' properties did not suffer a significant decline in value, that Chase had a duty to consider Plaintiffs' first mortgage balances, or prohibiting Chase from charging fees for faxing documents. To the extent Plaintiffs' breach of implied covenant of good faith and fair dealing claims are based on those allegations, they should be dismissed.

### D. Plaintiffs Fail To State A Claim That Chase Violated The Implied Covenant By Failing To Provide Sufficient Notices Of Suspension Or Reduction To Borrowers.

Plaintiffs next claim Chase breached the implied covenant of good faith and fair dealing by providing HELOC suspension and reduction notices to Plaintiffs that were allegedly insufficient because they did not contain certain information. (*See* CAC ¶¶ 154-156.) This claim fails for two reasons.

First, Plaintiffs' HELOC agreements do not include a provision governing what information Chase must include in a notice of suspension or reduction based on a significant

decline in property value. (*See* CAC Group Exhibit A.) Instead, TILA and Regulation Z govern the contents of the notices, and Chase complied with those requirements (which do *not* require Chase to disclose the information Plaintiffs claim Chase omitted). The implied covenant of good faith and fair dealing does not create a duty to disclose more. *See, e.g., Rendon v. Countrywide Home Loans, Inc.*, No. CV F 09-1584 LJO DLB, 2009 WL 3126400, at *11 (E.D. Ca. Sept. 24, 2009) ("The covenant cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.") (*citing Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1120 (Cal. Ct. App. 2008)). In fact, both this Court the Central District of California recently rejected claims challenging the sufficiency of similar HELOC notices. *See Hickman I*, 683 F. Supp. 2d at 789; *Walsh v. JPMorgan Chase Bank, N.A.*, No. 09-cv-04387, slip op. at 3 (C.D. Cal. March 5, 2010) ("*Walsh II*") (attached as Exhibit F).

Chase's suspension notices satisfy the two Regulation Z requirements for letters notifying borrowers of a suspension or reduction of a HELOC credit limit and nothing in Plaintiffs' HELOC agreements impliedly requires Chase to provide more or different disclosures. Regulation Z contains two straightforward notice requirements: (1) the notice must contain specific reasons for the reduction or suspension of credit; and (2) the notice must state whether the creditor requires the borrower to request reinstatement of his or her credit. 12 C.F.R. § 226.9(c)(1)(iii). The notices sent to Plaintiffs satisfy these two requirements. First, the notices "contain specific reasons for the action," explaining that the reason for suspension or reduction of the HELOC was due to a decline in property value from its valuation at the time of HELOC origination. (*See, e.g.,* Cavanagh Suspension Notice at 1, CAC, Group Exhibit B ("This is occurring because of a significant decline in your property value.") Second, the notices inform

Plaintiffs that they must "request reinstatement of credit privileges." 12 C.F.R. § 226.9(c)(1)(iii). The notices further state that Plaintiffs could request reinstatement of the line of credit, and providing detailed instructions regarding that process. (*See*, *e.g.*, Cavanagh Suspension Notice at 2 ("We offer an appeals process. If you disagree with the decline in your property value, it will be your responsibility to call us ... to initiate your appeal.") In both *Hickman I* and *Walsh II*, the courts found similar HELOC notices sufficient pursuant to TILA. *See Hickman I*, 683 F. Supp. 2d at 786; *Walsh II*, slip op. at 3. The implied covenant of good faith and fair dealing does not create a duty to supply additional disclosures where the neither the contract nor applicable federal regulations do not.

Second, Plaintiffs make no plausible allegation that Chase *withheld* any of the information they claim Chase omitted from the notices. In other words, while some of the information Plaintiffs say Chase should have disclosed was not included in the HELOC suspension notices, Plaintiffs do not plead that Chase refused or failed to disclose that information in subsequent communications. In fact, Plaintiffs' allegations and correspondence attached to the Complaint demonstrate that Chase *did* disclose such information. For example, Plaintiffs complain that the notices "do not identify the updated property value." (CAC ¶ 155.) As an initial matter, the notices Chase sent to Cavanagh, Hackett, Malcolm, and Wilder *do* contain the updated property value Chase relied on to suspend or reduce the HELOC. (*See*, *e.g.*, *id.*, ¶¶ 37, 52, 66, 95.) Mayes and Walsh both allege Chase disclosed that value to them when they later called or wrote to Chase. (*Id.*, ¶¶ 76, 90-91.) Indeed, Mayes alleges that when he contacted Chase for more information about the suspension, Chase provided Mayes with a Valuation Report showing that an AVM set his property value at $151,000 as of March 2009. (*See id.*, ¶ 76 and Exhibit E.)

Therefore, Plaintiffs' implied covenant claims based on an alleged failure to provide information to Plaintiffs fails. TILA, Regulation Z, and the HELOC agreements contain no provisions suggesting Chase had a duty to provide the additional information Plaintiffs say they wanted and, even if they did, Chase did not withhold that information from Plaintiffs.

### E. Plaintiffs Fail To State A Claim That Chase Violated Any Implied Covenant By Shifting The Burden Of Reinstatement To Plaintiffs.

Finally, Plaintiffs allege that Chase breached the implied covenant of good faith and fair dealing by requiring Plaintiffs to obtain and pay for an appraisal up front as part of the appeal and reinstatement process. (*See* CAC ¶¶ 157-158.) This implied covenant claim fails because TILA and Regulation Z expressly permit what Plaintiffs say should be impliedly prohibited by their contracts. Regulation Z permits Chase to place the burden of requesting reinstatement on the borrower by sending the borrower a notice informing him that he must request reinstatement of his credit, and nothing in Plaintiffs' HELOC agreements provides otherwise. *See* 12 C.F.R § 226.9(c)(1)(iii); *see also* 12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 3-4. The Official Commentary states "the creditor may shift the duty to the consumer to request reinstatement" by giving the consumer notice of that obligation. 12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 4. If a borrower requests reinstatement, the Official Commentary permits the lender to collect "bona fide and reasonable appraisal fees … actually incurred in investigating whether the condition permitting the freeze continues to exist." *Id.* at 3.

In rejecting similar claims, Judge St. Eve held that Regulation Z and the Official Commentary do not prevent a lender from placing the burden on the borrower to pay appraisal fees up front, "as long as the fees are bona fide and reasonable." *Hickman I*, 683 F. Supp. 2d at 789; *see also Malcolm*, 2010 WL 934252, at *4. Here, Plaintiffs do not allege Chase failed to investigate whether their HELOCs should be reinstated upon request or charged Plaintiffs bogus

or unreasonable appraisal fees. Because this appeals process complied with TILA, Regulation Z, and the Official Commentary, the Court should not read into the HELOC agreements implied obligations contrary to those laws.[12]

## V. PLAINTIFFS FAIL TO STATE A CLAIM FOR RESTITUTION AND UNJUST ENRICHMENT.

In the alternative to their contract claims, Plaintiffs bring a claim for restitution and unjust enrichment (Count V), claiming Chase was unjustly enriched because (1) Chase received the benefits of up-to-date on-site appraisals on properties; (2) Chase retained monies that it otherwise would have had to lend out; (3) Chase's suspension and reduction of Plaintiffs' HELOCs freed up reserves that Chase could benefit from by lending at higher rates; and (4) Chase retained annual fees paid by Plaintiffs after the suspensions and reductions. (*See* CAC ¶¶ 63-170.) This claim suffers from the same deficiencies as Plaintiffs' Counts III and IV and should likewise be dismissed.

### A. Plaintiffs Fail To State A Claim For Restitution And Unjust Enrichment Because Express Contracts Govern The Parties' Relationships.

The law governing Plaintiffs' unjust enrichment claim varies from state to state, but generally, Plaintiffs cannot bring an unjust enrichment claim because their HELOC agreements govern the relationship between the parties. California does not recognize a claim for unjust enrichment at all, except possibly as a form of recovery under California's Unfair Competition Law. *See Melchior v. New Line Prod., Inc.*, 106 Cal. App. 4th 779, 793 (Cal. Ct. App. 2003) ("[T]here is no cause of action in California for unjust enrichment."); *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (Cal. Ct. App. 2004) (explaining that unjust enrichment, or restitution, is

---

[12] Moreover, even if TILA or an implied covenant prohibited Chase's actions (which is not the case), only those Plaintiffs who requested reinstatement and paid appraisal fees could state a claim for breach of the implied covenant of good faith and fair dealing. Named Plaintiffs who do not allege that they incurred appraisal fees in pursuing an appeal (*e.g.* Frank, Mayes, Walsh) lack standing to challenge appraisal fees that did not apply to them.

not a cause of action or remedy, but instead a general principal underlying various legal doctrines.); *Cortez v. Purolator Air Filtration Prods Co.*, 23 Cal. 4th 163, 180 (Cal. 2000) (the UCL does not require restitution, but provides the court with discretion to make orders necessary to restore plaintiff's money or property lost as a result of illegal behavior where appropriate).

Similarly, under Minnesota, Delaware, and Texas law, the existence of an express contract between the parties bars Plaintiffs' attempt to recover under an unjust enrichment theory. *Zupancich v. U.S. Steel Corp.*, No. 08-5847 ADM/RLE, 2009 WL 1474772, at *3 (D. Minn. May 27, 2009) ("In Minnesota, the existence of an express contract between the parties ... precludes recovery under the theories of unjust enrichment and quantum meruit."); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009) ("[A] claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim."); *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *Brooks v. Valley Nat. Bank*, 548 P.2d 1166, 1171 (Ariz. 1976) (recognizing that no claim of unjust enrichment exists where one party is entitled to the compensation he receives, and where a specific contract governs the relationship of the parties). Under Texas law, even where an unjust enrichment theory applies, a party may only recover when one party has obtained a benefit from the other by fraud, duress, or the taking of an undue advantage. *See Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

Here, express HELOC agreements govern the terms on which Plaintiffs base their unjust enrichment claim, including the suspension and reduction of Plaintiffs' credit, as well as the Chase's ability to charge annual fees. *See* Section III, *supra*.[13] (*See* CAC ¶¶ 166-168.) As a result, their unjust enrichment claim cannot stand. *See, e.g., Kuroda*, 971 A.2d at 891 (it is not

_____

[13] As explained in Section III, *supra*, Plaintiffs do not actually allege that Chase charged any annual fee after their HELOCs were suspended.

"unjust" to retain a benefit permitted under a contract agreed to by the parties); *Falahati v. JPMorgan Chase Bank, N.A.*, No. CV 09-06012 RGK, slip op. at 5 (C.D. Cal. Dec. 22, 2009) (dismissing unjust enrichment claim where HELOC agreement expressly governed the suspension of plaintiff's HELOC and annual fees) (attached as Exhibit G).

### B.    Plaintiffs Fail To Allege Chase Wrongfully Retained Any Actual Benefit.

Even if Plaintiffs could sustain a claim for restitution and unjust enrichment despite their express contracts with Chase, Plaintiffs fail to allege sufficient facts to state a claim because they have not alleged any benefit purportedly conferred upon Chase. Plaintiffs allege that Chase wrongfully "benefitted" from getting appraisals in connection with appeals and because it did not lend further amounts on Plaintiffs' HELOCs; neither of these allegations can support a claim for unjust enrichment.

Even if Plaintiffs' allegation that Chase "received and appreciated the benefits of up-to-date on-site appraisals" on Plaintiffs' properties (CAC ¶ 165) were a cognizable "benefit," retention of the "benefit" would not be unjust because, as explained above, *supra* Section IV(E), TILA and Regulation Z permit Chase to charge borrowers bona fide appraisal fees in connection with reinstatement requests. Moreover, this theory cannot apply to Cavanagh, the Franks, Mayes, and Walsh. For his part, Cavanagh admits Chase refunded part of the appraisal fee. (*Id.*, ¶ 39.) The Franks and Walsh do not allege they obtained and paid for any appraisal. (*See generally*, *id.*, ¶¶ 48, 87-93.) Mayes does not allege he paid for an appraisal in connection with his appeal; Mayes relied on a prior appraisal obtained when he refinanced his primary mortgage. (*Id.*, ¶ 77.)

Plaintiffs' other "benefit" allegations are also flawed. Plaintiffs claim Chase was unjustly enriched by retaining money "that should have been made available to customers as part of their HELOCs," and "benefit[ed] from time value of the additional funds" which allegedly "freed up

additional funds for [Chase's] own use." (CAC ¶¶ 165-167.) But Plaintiffs make no specific allegations of what actual monetary benefits Chase allegedly wrongfully retained. "Time value" of money that allegedly "freed up" additional funds for other use is not a "benefit" to Chase, and Plaintiffs do not allege how they suffered any detriment. *See Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51, 924 (Cal. 1996) (explaining that defendant must have received a benefit, and the benefit must have been retained wrongfully); *Oracle Corp. v. SAP AG*, No. C 07-1658 PJH, 2010 WL 3258603, at *13 (N.D. Cal. Aug. 17, 2010) (dismissing unjust enrichment claim and finding that plaintiffs could not recover "saved development costs" for software materials where they did not lose or give away those costs and thus defendant did not wrongfully retain an actual benefit).

Finally, Plaintiffs cannot state an unjust enrichment claim based on Chase continuing to collect annual fees after HELOC suspensions (CAC ¶ 168) because none of the Plaintiffs alleges that Chase charged them an annual fee after their HELOCs were suspended. *See supra*, Section III(C). Moreover, to the extent Plaintiffs allege Chase was unjustly enriched by failing to refund annual fees that were charged before the HELOCs were suspended, their HELOC agreements bar this theory because these contracts expressly provide that the annual fees are "nonrefundable." (*See* Cavanagh HELOC Agreement at 4; Hackett HELOC Agreement at 5; Malcolm HELOC Agreement at 4; Wilder HELOC Agreement at 3, CAC Group Exhibit A.)

## VI.    PLAINTIFFS' STATUTORY CONSUMER FRAUD CLAIMS ALLEGING "FRAUDULENT" CONDUCT FAIL (COUNTS VI, VIII-X).

Plaintiffs' claims that Chase's conduct was "fraudulent" or "deceptive" under California, Illinois, and Minnesota consumer protection statutes (*see* CAC ¶¶ 174-177, 195-202, 208-211, 215-218) fail because they do not satisfy Rule 9(b)'s heightened pleading requirements for claims

alleging "fraudulent" or "deceptive" conduct.[14]  Moreover, these claims fail because the Illinois, California, and Minnesota statutes under which Plaintiffs assert claims require a Plaintiff to allege and prove that she either relied on the alleged fraud, that she was in some manner deceived, and/or that she incurred damages proximately caused by the deceptive conduct.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (Cal. 2009) (finding that a consumer suing a business under the "fraud" prong of the UCL must show actual reliance on the alleged misrepresentation); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 861 (Ill. 2005) (In "a cause of action for fraudulent misrepresentation brought under the [Illinois] Consumer Fraud Act, a plaintiff must prove that he or she was actually deceived by the misrepresentation in order to establish the element of proximate causation."); *Thompson v. American Tobacco Co.*, 189 F.R.D. 544, 553 (D. Minn. 1999) (requiring proof of reliance where the plaintiff seeks damages under Minnesota's consumer fraud act).

Here, none of the Plaintiffs alleges he or she was actually deceived by any of the allegedly fraudulent statements or deceptive conduct.  In fact, Plaintiffs affirmatively allege they *did not believe* Chase's statements in letters and conversations were true – Plaintiffs immediately set out to disprove Chase's claim that their property values had significantly declined.  (*See, e.g.*, CAC ¶¶ 38-39, 44, 48, 54-55, 67-69, 77, 96.)  Accordingly, Plaintiffs' statutory claims alleging

---

[14]  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to California UCL claim); *Levin v. Citibank, N.A.*, No. C-09-0350-MMC, 2009 WL 3008378, at *6 (N.D. Cal. Sept. 17, 2009) (dismissing California UCL claims challenging "fraudulent" suspension of HELOC account for failure to plead fraud with particularity as required by Rule 9(b)); *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005) (A "complaint made pursuant to the ICFA 'must be pled with the same specificity as that required under common law fraud.'") (*quoting Elson v. State Farm Fire & Cas. Co.*, 295 Ill. App. 3d 1, 14, 691 N.E.2d 807, 816 (1st Dist. 1998)); *Gantchev v. Predicto Mobile, LLC*, No. 09 C 2312, 2009 WL 3055317, at *2 (N.D. Ill. Sept. 18, 2009); *Drobnak v. Anderson Corp.*, Civil No. 07-2249 (PAM/JSM), 2008 WL 80632, at *4 (D. Minn. Jan. 8, 2008) (applying Rule 9(b) standard to Minnesota UDTPA claim); *Russo v. NCS Peterson, Inc.*, 462 F. Supp. 2d 981, 1003 (D. Minn. 2006) (applying Rule 9(b) standard to Minnesota CFA claim); *Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 963-64 (D. Minn. 2000) (dismissing Minnesota CFA and UDTPA claims where the complaint failed to meet Rule 9(b)'s particularity requirements).

fraudulent or deceptive conduct should be dismissed. *See, e.g., Villasenor v. Am. Signature, Inc.*, No. 06 C 5493, 2007 WL 2025739, at *5 (N.D. Ill. July 9, 2007) (dismissing ICFA claim where plaintiff "has not alleged that he was actually deceived" and court could not "assume that [plaintiff] could prove that he was actually deceived without having included that allegation in his Complaint"); *Tobacco II*, 46 Cal. 4th at 328 ("a plaintiff must plead and prove actual reliance to satisfy the standing requirement of [the UCL.]").

Finally, with respect to Plaintiffs' claims under the Minnesota Prevention of Consumer Fraud Act, Cavanagh alleges Chase failed to disclose certain facts "described" above. (CAC ¶ 211.) Cavanagh does not, however, allege with the required particularity what those supposedly concealed facts were. Nor does he allege, as he must to recover under Minnesota's CFA, that Chase had a duty to disclose the supposedly concealed facts. *See B.L. Sailor v. Northern States Power Co.*, 4 F.3d 610, 614 n. 5 (8th Cir. 1993); *Erickson v. Horing*, No. C4-02-138, 2002 WL 31163611, at *10-11 (Minn. Ct. App. Oct. 1, 2002). Cavanagh's Minnesota UDTPA claim is no better. He simply restates the statutory elements and tacks on an allegation that Chase violated those elements. (CAC ¶¶ 214-215.) Such a formulaic recitation does not meet the pleading requirements of Rule 8, let alone the heightened pleading requirements under Rule 9(b). *See Iqbal*, 129 S. Ct. at 1949 (a complaint containing "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" does not state a claim).

## VII. PLAINTIFFS' STATUTORY CONSUMER CLAIMS ALLEGING "UNFAIR" OR "UNLAWFUL" CONDUCT FAIL (COUNTS VI-VII).

Plaintiffs also attempt to assert claims under the "unlawful" and "unfair" and "fraudulent" prongs of the California UCL, and assert "unfair" practices under the Illinois Consumer Fraud Act. (*See* CAC ¶¶ 172-173, 178-179, 186-190.) In large part, these allegations simply restate the allegations on which they base their TILA or contract claims – *i.e.*, Plaintiffs challenge

Chase's reliance on AVMs, claim Chase failed to consider the available equity in property, or claim it was unfair to require Plaintiffs to request and pay for appraisals as a part of any appeal. (CAC ¶¶ 173, 178-179, 186-187, 189.)  For the same reasons these allegation fail to state TILA or contract claims, these allegations also fail to state claims under Illinois or California's consumer statutes.  The conduct Plaintiffs challenge was either permitted by TILA, Regulation Z, or Plaintiffs' HELOC agreements, or Plaintiffs fail to allege how the conduct is "unfair." *Supra*, Sections I and III.

Both California and Illinois prohibit actions under their respective deceptive trade statutes where the alleged conduct does not violate TILA.  Under California law, where legislation "clearly permits" the conduct, no UCL claim can be maintained.  "When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (Cal. 1999) (internal citations omitted).  Likewise, under Illinois law, where a defendant complies with TILA and its disclosure requirements, a plaintiff cannot recover under the ICFA.  *See Lanier v. Assocs. Fin., Inc.*, 499 N.E.2d 440, 447 (Ill. 1986) (The ICFA's "general prohibition of fraud and misrepresentation in consumer transactions did not require more extensive disclosure in the plaintiff's loan agreement than the disclosure required by the comprehensive provisions of the Truth in Lending Act.").[15] Plaintiffs' claims that Chase engaged in "unfair" conduct in violation of California's UCL and the Illinois Consumer Fraud Act fail because Chase complied with TILA and Regulation Z with respect to: (1) suspending or reducing a borrower's credit when his or her property value significantly declined; (2) using AVMs; (3) disclosing specific information

---

[15]  *See also Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 962-63 (Ill. 2002) (where TILA did not require disclosures, plaintiff's ICFA claim challenging lack of disclosure failed); *Jackson v. South Holland Dodge, Inc.*, 755 N.E.2d 462, 467-70 (Ill. 2001) (compliance with TILA's disclosure requirements is a defense to an ICFA claim)

when suspending or reducing a HELOC; and (4) shifting the burden of reinstatement to the borrower. *See supra*, Sections I and IV.

Plaintiffs further fail to state a claim under the "unlawful" prong of the UCL because Plaintiffs do not – and cannot – point to a law that Chase has violated. The UCL "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *Cel-Tech Commc'ns.*, 20 Cal. 4th at 180 (internal citations omitted). As demonstrated above, Plaintiffs have not stated a claim for a violation of TILA (*see supra*, Section I), nor have they cited any other law Chase allegedly violated. Consequently, Plaintiffs' claim for violation of the "unlawful" prong of the UCL should be dismissed. *Rubio*, 572 F. Supp. 2d at 1168 (dismissing UCL claim after dismissing TILA claim: "[w]here a plaintiff cannot state a claim under the 'borrowed' law, she cannot state a UCL claim either"); *Behdjou v. U.S. Bancorp*, No. CV 09-2314 AHM (RCx), 2009 WL 2048124, at *2 (C.D. Cal. July 13, 2009) (granting motion to dismiss UCL claim where "[t]he only unlawful predicate violation asserted" was a purported TILA violation which failed to state a claim); *Schulken*, slip op. at 9.

## VIII. WILDER'S CLAIM UNDER CALIFORNIA'S UCL FAILS BECAUSE THE UCL DOES NOT APPLY TO ACTIONS OCCURRING OUTSIDE OF CALIFORNIA THAT ALLEGEDLY INJURE NON-CALIFORNIA RESIDENTS (COUNT VI).

Plaintiffs assert their UCL claim purportedly on behalf of Wilder and several of the other Plaintiffs. Wilder, however, cannot assert a UCL claim against Chase because both he and Chase are not California residents and because he pleads no facts suggesting that any of the allegedly unlawful conduct by Chase occurred in California. Wilder alleges he is an Arizona resident and that the property securing his HELOC is located in Arizona. (CAC ¶ 29.) He alleges Chase is a national banking association with its main office in Ohio and is a citizen of that state. (*Id.*, ¶ 30.) He does not allege that any Chase conduct occurred in the State of California. (*Id.*, ¶ 34.) California's "UCL does not apply to actions occurring outside of

California that injure non-residents." *Standfacts Credit Servs., Inc. v. Experian Info. Solutions, Inc.*, 405 F. Supp. 2d 1141, 1148 (C.D. Cal. 2005), *aff'd*, 294 Fed. Appx. 271 (9th Cir. 2008); *see also Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 226 (1999) (non-California plaintiffs could not recover under the UCL where the alleged injury was "caused by conduct occurring outside of California's borders by actors headquartered and operating outside of California").  Accordingly, Wilder's UCL claim should be dismissed.  *Wilder*, No. SACV 09-0834 DOC, slip op. at 7-8 (dismissing Wilder's UCL claims against Chase because neither Chase nor Wilder are California residents and Wilder failed to allege any wrongful conduct by Chase in California).

## CONCLUSION

For all of the foregoing reasons, JPMorgan Chase Bank, N.A. respectfully requests that this Court dismiss the Consolidated Amended Class Action Complaint in its entirety and with prejudice and for such further and different relief as this Court deems necessary and just.

Date:   October 19, 2010

Respectfully submitted,
JPMORGAN CHASE BANK, N.A.

By:    /s/Michael G.Salemi
One of its attorneys

LeAnn Pedersen Pope (6186058)
Victoria R. Collado (6204015)
Michael G. Salemi (6279741)
Tiffany L. Sorge Smith (6293842)
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, 22nd Floor
Chicago, Illinois 60611-3607
Telephone:    (312) 840-7000
Facsimile:    (312) 840-7900

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on October 19, 2010, a true and correct copy of the foregoing document was filed electronically using the Court's Electronic Case Filing System. A Notice of Electronic Filing will be sent by electronic mail to all counsel of record by operation of the Court's Electronic Filing System.

By:   /s/Michael G.Salemi