# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| In re: JP Morgan Chase Bank Home Equity Line of Credit Litigation | ) ) ) ) ) ) ) | MDL No. 2167<br><br>Master Docket Case No. 10-cv-3647<br><br>Judge Rebecca R. Pallmeyer |

**DECLARATION OF ATTORNEY STEVEN WOODROW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF A CLASS ACTION SETTLEMENT**

I, Steven Lezell Woodrow, declare on oath as follows:

1. I am an attorney with the law firm of Edelson McGuire and can testify competently to the information set forth in this Declaration if called upon to do so. I am one of the attorneys seeking an appointment as Class Counsel in this case.

*Investigation Into Banking Industry's HELOC Suspension Practices*

2. In late 2008 – early 2009, the law firms comprising Interim Class Counsel began to receive and review hundreds of complaints from HELOC customers stating that Chase and other banks had suspended their HELOC accounts. These initial reports lead to a far-reaching investigation into the banking industry as a whole and its HELOC suspension, reduction, and reinstatement practices in particular. As part of this investigation, Interim Class Counsel interviewed and gathered documents and information from complaining homeowners, including their HELOC contracts, deeds, commitment letters, suspension and reduction notices, financial documents, appraisals and other property valuations and reports, correspondence with their bank

and other information.

3. During the investigation, we also compared and contrasted the policies and practices of several banking institutions to determine how national lenders approached and treated their duties to comply with TILA, Regulation Z, and their borrowers' respective HELOC contracts. We additionally reviewed thousands of pages of formal, informal, and confirmatory discovery produced through the litigation, including voluminous documents produced by Chase in one of the underlying class actions, *Hackett v. JPMorgan Chase Bank, N.A.*

4. The investigation also included a detailed review of such sources as TILA and its legislative history, Regulation Z, the Official Commentary from the Board of Governors of the Federal Reserve. We have also studied publications and commentary related to HELOC suspensions and the use of the automated valuation models from the Office of the Comptroller of the Currency, Federal Deposit Insurance Corporation, and Office of Thrift Supervision.

***Litigation of underlying class actions and discovery conducted by Interim Class Counsel***

5. Each of the named Plaintiffs in this case alleged that Chase has suspended their HELOCs due to the bank's claim, under the pretext of an automated valuation model ("AVM") that their homes had significantly declined in value. Chase vigorously denied these allegations and the Parties briefed several motions to dismiss in the *Malcolm*, *Wilder*, *Walsh*, *Hackett*, *Frank* and *Cavanagh* matters prior to the Judicial Panel on Multidistrict Litigation's transfer and centralization of these cases before this Court.

6. Interim Class Counsel has also engaged in extensive discovery in this case. This has included formal, informal and confirmatory discovery, drafting and propounding interrogatories, requests to produce, and requests to admit, engaging in meet-and-confers with Chase's counsel, reviewing of thousands of pages documents produced by Chase and its primary

AVM vendor, Corelogic, including Chase's monthly HELOC line management reports, and reviewing and analyzing the responses to interrogatories and the deposition testimony of Chase's executives in this and similar proceedings. For example, discovery has shown that before treating the Class Members' HELOCs, Chase used a standard "waterfall" logic to its HELOC portfolio, applying a common cascade of AVMs and treatment criteria to every loan at issue.

7. The formal, informal and confirmatory discovery has also shown that following the initiation of this litigation and filing of the underlying class actions, Chase has made a series of amendments to its HELOC policies and procedures that were beneficial to its borrowers. It was important in this litigation to ensure that Chase would not retreat from these beneficial changes.

8. Based on our understanding of the size of the class and the likelihood that borrowers offered reinstatement proactively will choose to accept it, Class Counsel anticipates that Chase's proactive HELOC reinstatements carry the potential of restoring billions of dollars worth of affordable credit to the Class Members. In addition, Counsel's investigation has shown that having received a notice of right to seek reinstatement of the suspended HELOC, a significant percentage of the Class Members will initiate the reinstatement process, of whom a considerable percentage will be successfully reinstated.

9. Finally, Chase identified during confirmatory discovery that the Class and the Former Customer Subclass each consist of thousands of members.

***The Mediation Process***

10. The Parties began settlement discussions early in this litigation. On May 16, 2011, prior to the Court's ruling on Chase's motion to dismiss, relying on discovery that had been conducted in other HELOC cases, Interim Class Counsel sent Chase a letter outlining potential

ways to resolve this litigation. Following the Court's ruling, the Parties agreed to schedule a mediation session.

11. On December 14, 2011, the Parties met in Chicago for a mediation session with Judge Andersen (Ret.) of JAMS. Judge Andersen has had experience mediating HELOC class action settlements involving Chase having served as the mediator in *Schulken v. Washington Mut. Bank*, 09-cv-2708-LHK (N.D. Cal.)—a class action that challenged Chase's HELOC suspensions effectuated through its IRS FORM 4506-T HELOC Block Program.

12. During the mediation, Interim Class Counsel obtained additional information about Chase's HELOC suspension and reinstatement practices as well as clarifications with respect to certain outstanding issues such as the size of the Former Customer Subclass and their potential damages.

13. While the Parties made significant process towards the settlement, they were unable to reach an agreement at the mediation. The Parties continued their dialog, routinely with Judge Andersen's oversight, regarding the potential settlement framework in the wake of the similar settlements with Chase's competitors, as well as the forms of relief that could be made available to the Class Members in this case.

14. During these subsequent negotiations, both Parties communicated their willingness to go forward with the litigation on multiple occasions. Eventually, however, the Parties negotiated and exchanged proposals and drafts of the settlement agreement.

15. By May 2012, the Parties reached an agreement in principle with respect to the relief for the Class and Former Customer Subclass. Only then the Parties began negotiating incentive awards for the named Plaintiffs and attorneys' fees for Interim Class Counsel. Following a series of teleconferences with Judge Anderson, the Parties reached an agreement as

to the incentive awards and attorneys' fees.

***The Named Plaintiffs***

16. All Named Plaintiffs have been actively involved in this litigation from its outset. They have been communicating extensively with Interim Class Counsel, providing numerous documents, reviewing and discussing drafts of briefs, and assisting in the legal and factual research to support their claims. Each of the Plaintiffs has therefore demonstrated that he or she has and will continue to protect the interests of the proposed Class. Likewise, Plaintiffs Hackett and Walsh have closed their HELOCs and thus adequately represent the Former Customer Subclass Members.

***Interim Class Counsel***

17. All three law firms comprising Interim Class Counsel have regularly engaged in major complex litigation similar in size, scope and complexity to this Action and have considerable experience in consumer class action litigation, especially class actions related to the banking industry generally and HELOC practices in particular.

18. Interim Class Counsel's extensive experience and comprehensive investigation into the banking industry's HELOC policies, has lead to their leadership in the underlying class actions as well as by other homeowners aggrieved by several national lenders, including Wells Fargo Bank, Citibank, National City Bank, GMAC Mortgage and OneWest Bank. Edeslon McGuire attorneys were appointed Class Counsel in the similar HELOC litigation against Wells Fargo and Citibank, and in the *Schulken* matter.

19. Edelson McGuire also took the lead in responding to the Federal Reserve Board of Governors' request for public comment on proposed changes to Regulation Z's HELOC suspension rules and collaborated with federal and state lawmakers and other public officials to

5

shed light on the problem of unjustified HELOC suspensions across the country.

***Class Counsel's Opinion of the Settlement***

20. Although Plaintiffs and Interim Class Counsel are confident in the strength of their claims against Chase, they also recognize that proceeding with the litigation here would have presented risks to the Class. While the Court certified the alleged class and subclass in the *Schulken* matter, no class action challenging a bank's HELOC suspension practices has proceeded to trial. Thus, when balanced against the strength of the settlement, it is apparent that the Settlement produces an exceptional result for Class Members.

I declare under penalty of perjury under the laws of the state of Illinois that the foregoing is true and correct. Executed this 14th day of November, 2012 at Denver, Colorado.

/s/ Steven L. Woodrow